STATE OF HAWAI`I, Plaintiff-Appellee,
v.
WARREN K. ELICKER, Defendant-Appellant,
ALBERT R. BATALONA, and DAVID K. SCRIVNER, aka DAVID K. SCRIBNER, Defendants.
No. 28190.
Intermediate Court of Appeals of Hawaii.
February 22, 2008.
On the briefs:
Shawn A. Luiz, for Defendant-Appellant.
Daniel H. Shimizu, Deputy Prosecuting Attorney, City and CuuilLy of Honolulu, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
WATANABE, Presiding Judge, FOLEY and NAKAMURA, JJ.
Defendant-Appellant Warren K. Elicker (Elicker) appeals from the Order of Restitution filed on September 14, 2006 in the Circuit Court of the First Circuit (circuit court).[1]
On appeal, Elicker contends the circuit court "committed reversible error when it ordered restitution in an amount that would ultimately deduct the aggregate sum of 20% of facility moneys earned by Elicker in light of Elicker already having a 10% deduction from his underlying robbery conviction prior to the escape conviction."
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Elicker's point of error as follows:
(1) Elicker argues that imposing restitution for the prison escape in addition to his earlier restitution order runs afoul of Hawaii Revised Statutes (HRS) § 652-1 (1993 & Supp. 2007) (Garnishee process; "garnishee fund"), which limits garnishment, in civil cases, to 5% of the defendant's first one hundred dollars of monthly income.
The circuit court filed Elicker's restitution order pursuant to HRS 706-647(1) (Supp. 2007). The plain language of § 706-647(1) indicates that restitution orders are enforceable in the same manner as civil judgments, but nowhere does 706-647(1) indicate that such orders are in and of themselves civil judgments or their equivalent. The section provides in relevant part:
§ 706-647 Civil enforcement. (1) A certified . . copy of an order of any court of this State for payment of. . . restitution pursuant to section 706-605 may be filed in the office of the clerk of an appropriate court of this State as a special proceeding without the assessment of a filing fee or surcharge. The order, whether as an independent order, as part of a judgment and sentence, or as a condition of probation or deferred plea, shall be enforceable in the same manner as a civil judgment.
Section 706-647(1) addresses only the manner in which restitution orders may be filed and enforced; it does not make them into civil judgments per se. A separate statutory scheme regulates collection of restitution orders against criminal defendants. HRS § 706-605(7) (Supp. 2007) (Authorized disposition of convicted defendants) directly addresses situations like that presented in this case and provides in relevant part that "[t]he court . . . shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment." This statute must be read in conjunction with HRS § 353-22.6 (1993), which provides in relevant part:
§ 353-22.6 Victim restitution. The director of public safety shall enforce victim restitution orders against moneys earned by the prisoner while incarcerated. The amount deducted and paid once annually to the victim shall be ten per cent of the prisoner's annual earnings.
Laws in pari materia shall be construed in reference to each other. HRS § 1-16 (1993). The 5% threshold set forth in § 652-1 is inconsistent with the 10% threshold established by 353-22.6. Restitution orders imposed pursuant to criminal proceedings are not subject to the 5% limitation set forth in § 652-1; rather, such orders are subject to §§ 706-605(7) and 353-22.6.
(2) The circuit court did not err, as Elicker contends, by failing to take into account his "necessary expenses" when it ordered him to pay restitution in this case. Restitution orders are subject to the holding set forth in State v. Johnson, 68 Haw. 292, 711 P.2d 1295 (1985), that "[t]he manner of payment must be reasonable and one that Defendant can afford taking into account Defendant's financial circumstances."[2] 68 997, 711 P.2d at 1299. Moreover, HRS § 706-605(7) requires that the circuit court "shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment." The circuit court must enter into the record "findings of fact and conclusions that the manner of payment is reasonable and one which the defendant can afford." State v. Gaylord, 78 Hawaii 127, 153, 890 P.2d 1167, 1193 (1995) (brackets omitted). In doing so, the circuit court must "determine the relevant time period and [the defendant's] gross income and necessary expenses during that time period." State v. Werner, 93 Hawai`i 290, 297, 1 P.3d 760, 767 (App. 2000). In this case, the circuit court did exactly that.
The circuit court's Order of Restitution provides in relevant part:
The Court reviewed [Elicker's] personal data including his employment history, income, expenses, and finds that he has the ability to make restitution payments. The Court further finds that [Elicker] is able to make payments because he is healthy, worked in the past, it is his responsibility to make payment, and the amount of restitution is a reasonable amount.
The court also made oral findings. At the restitution hearing, the circuit court heard testimony from Elicker as to his income and expenses. The circuit court was made aware of the impact of the prior, unrelated restitution order on Elicker's finances. The circuit court noted that it had "to make some kind of findings about what is fair for [Elicker] to pay, how much [Elicker has] the ability to pay, and the like." The circuit court went on to determine that Elicker's total potential earnings while in prison would total $11,352. The circuit court also acknowledged Elicker's prior, unrelated restitution order, noting that the court would not delay restitution in this case as a result of that prior order. The circuit court further acknowledged that its decision might cause Elicker the loss of "batteries for [his] radio or food" and continued:
I am going to order . . . since it's 10 percent, I am going to order you to do that, which would mean . . . a minimum of a dollar a month, no more than 10 percent, which sounds to me like $2.20. So you would still be having  it would appear if you're having two of these for two different cases, a total of 20 percent of your salary, it sounds like, is going to be taken out.
So that still gives you 80 percent of it. It may not be as much as you want, but you're the one who got yourself... you're the one who committed the crime, so you're the one who's doing the time and having to pay for it.
* * *
... I'm making the finding there is the ability to a reasonable amount. I think it's totally And I wish you good luck in making more money raise. Then you'll have more money to spend[.]
In light of the extensive oral and written findings and conclusions, we conclude that the circuit court adequately "determine[d] the relevant time period and [the defendant's] gross income and necessary expenses during [the relevant] time period." Werner, 93 Hawaii at 297, 1 P.3d at 767. The circuit court committed no error.
Therefore,
The Order of Restitution filed on September 14, 2006 in the Circuit Court of the First Circuit is affirmed.
NOTES
[1] The Honorable Steven S. Alm presided.
[2] Moreover, Hawaii Revised Statutes (HRS) § 353-22.6 (1993) expressly and specifically allows deductions pursuant to restitution orders up to ten percent of a prisoner's earnings. Read in conjunction with HRS § 706-605 (Supp. 2007), this creates a harmonious and logically cohesive mechanism for enforcing payment of restitution orders in criminal cases.